1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7  JOSHUA ROSEWOLF,

8               Plaintiff,

9         v.

   MERCK & CO., INC., et al.,
10
   Defendants.
11

12  MARK STARR,

13               Plaintiff,

14         v.

15  MERCK & CO., INC., et al.,

   Defendants.
16

17  TYLER SKINNER,

18               Plaintiff,

19         v.

20
   MERCK & CO., INC., et al.,
21               Defendants.

22

23  SHAUNA GIBSON,

24               Plaintiff,

25         v.

26  MERCK & CO., INC., et al.,

               Defendants.
27

28

Case Nos.  22-cv-2072, 22-cv-02138-JSW, 22-cv-02260, and 22-cv-2263

**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTIONS TO DISMISS AND SETTING DEADLINES AND CASE MANAGEMENT CONFERENCE**

Re: Dkt. Nos. 18 (Rosewolf), 8 (Starr and Skinner), and 9 (Gibson)

*United States District Court*
*Northern District of California*

1

United States District Court
Northern District of California

1    Now before the Court for consideration are motions to dismiss filed by Defendants Merck

2    & Co., Inc., Merck Sharp & Dohme Corp., Organon & Co., and Organon, LLC ("Defendants").

3    The Court has considered the parties' papers, relevant legal authority, and the record in this case,

4    and it HEREBY GRANTS, IN PART, AND DENIES, IN PART, Defendants' motions.

5                                            **BACKGROUND**[1]

6    **A.      Regulatory Background for New and Generic Drugs.**

7            In order to place Plaintiffs' claims in context, the Court begins with some background of

8    the law and regulations relating to the manufacture and sales of new and generic drugs.  When a

9    drug manufacturer wants to market a new drug, it must submit a New Drug Application ("NDA")

10   to the FDA and then "undergo a long, comprehensive, and costly testing process[.]"  *FTC v.*

11   *Activis, Inc.*, 570 U.S. 136, 141 (2013).  When a manufacturer wants to market a generic version

12   of an FDA approved new drug, it can file an Abbreviated New Drug Application ("ANDA") and

13   "piggy-back" on the brand-name manufacturer's NDA by "show[ing] that the generic drug has the

14   same active ingredients as, and is biologically equivalent to, the brand-name drug."  *Caraco*

15   *Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 405 (2012) (citing 21 U.S.C. §§

16   355(j)(2)(A)(ii), (iv)).

17           As part of the NDA process, the manufacturer of the new drug must submit and the FDA

18   must approve "the exact text in the proposed label."  *Wyeth v. Levine*, 555 U.S. 555, 568 (2009);

19   *see also* 21 U.S.C. § 355; 21 C.F.R. § 314.105(b).  Under the ANDA process, the manufacturer of

20   a generic drug must "show that the safety and efficacy labeling proposed ... is the same as the

21

22   [1]      In addition to the captioned cases, the Court has related four other cases that involve
     identical, or nearly identical claims, against Defendants.  (*See Rosewolf*, Dkt. Nos. 28, 30, 36, 50.)
23   On August 9, 2022, the Court granted Defendants' motion to sever and denied the Plaintiffs'
     cross-motion to consolidate in *Rosewolf* and *Gibson*.  (*Id.,* Dkt. No. 46.)  On August 16, 2002, the
24   Court granted Defendants' motion to dismiss Rosewolf's claims, with leave to amend, on the basis
     that his claims were time barred.  (*Id.*, Dkt. No. 47.)

25           The substance of Defendants' pending motions to dismiss also are identical or nearly so,
26   although Defendants did not move to dismiss Rosewolf's claims for lack of personal jurisdiction.
     In their opposition briefs, Starr, Skinner, and Gibson incorporated by the arguments Rosewolf
27   raised in his opposition brief on Defendants' challenges to the substance of Plaitntiffs' claims.
     Accordingly, that is the brief on which the Court has relied to resolve Defendants' Rule 12(b)(6)
28   motions.

                                                    2

United States District Court
Northern District of California

1   labeling approved for the brand-name drug." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 612-13

2   (2011) (internal alterations and quotations omitted). Thus, "[a] brand-name manufacturer seeking

3   new drug approval is responsible for the accuracy and adequacy of its label[,]" whereas a generic

4   manufacturer "is responsible for ensuring that its warning label is the same as the brand name's"

5   label. *Id.* at 613 (citations omitted). Although any drug manufacturer can apply to the FDA to

6   change an existing drug label, only the manufacturer of the branded drug can "add or strengthen a

7   contraindication, warning, precaution, or adverse reaction" warning without waiting for FDA

8   approval. *Wyeth*, 555 U.S. at 568 (citing 21 C.F.R. § 314.70(c)(6)(iii)(A), (C)).

9   **B.      Factual Background.**

10      Defendants manufacture and sell the brand-name drug "Singulair," and each Plaintiff

11  alleges that Singulair's active ingredient, montelukast, causes neuropsychiatric injury by crossing

12  the blood-brain barrier. Plaintiffs also allege that Defendants knew montelukast could cause these

13  types of injuries but failed to warn of those risks and failed to maintain the accuracy and adequacy

14  of Singulair's warning label. (*See, e.g., Starr* Compl. ¶¶ 32-85.) Defendants held patent rights on

15  montelukast until August 2012, when the patent expired. (*Id.* ¶¶ 2, 27.) At that point, other

16  companies began to manufacture and sell generic montelukast. (*Id.* ¶ 86.) Plaintiffs allege that

17  Defendants "engaged in an extensive campaign to educate physicians in California about the

18  alleged benefits of Singulair" but misrepresented its safety in that campaign. (*Id.* ¶ 19.)

19      Plaintiffs also allege that on March 4, 2020, the FDA required Defendants to add a Black

20  Box Warning to Singulair's label and required a new medication guide. (*Id.* ¶ 3.) The Black Box

21  Warning states:

22      Serious neuropsychiatric events have been reported in patients
        taking Singulair. These include:

23

24      agitation, aggressive behavior or hostility, anxiousness, depression,
        disorientation, disturbance in attention, dream abnormalities,
        dysphagia (stuttering), hallucinations, insomnia, irritability, memory

25      impairment, obsessive-compulsive symptoms, restlessness,
        somnambulism, suicidal thoughts and behavior (including suicide),

26      tic, and tremor …

27      Psychiatric disorders: agitation including aggressive behavior or
        hostility, anxiousness, depressions, disorientation, dream

28      abnormalities, hallucinations, insomnia, irritability, restlessness,

3

somnambulism, suicidal thinking and behavior (including suicide),
tremor [*see Warnings and Precautions (5.4)*].

(*Id.* ¶ 4 (emphasis in original)).  The Black Box Warning also states that "the benefits of Singulair

may not outweigh the risks, and the FDA issued a press release in which it stated that "many

patients and health care professionals are not fully aware of these risks."  (*Id.*)

Plaintiffs allege they were prescribed Singulair during various periods after 2012, which

"were filled with branded and/or generic Singulair."[2]  (*Starr* Compl. ¶¶ 7-8; *Skinner* Compl. ¶¶ 7-

8; *Gibson* Compl. ¶¶ 7-8.)  According to Plaintiffs, if they or their physicians had known that

Singulair "could cause [them] to suffer neuropsychiatric events, [their physicians] would not have

prescribed Singulair," and they would not have ingested it.  (*Starr* Comp. ¶ 11; *Skinner* Compl. ¶

10; *Gibson* Compl. ¶ 11.)  Based on these and other allegations that the Court shall address as

necessary, Plaintiffs assert the following claims for relief: Count I - strict liability (design defect);

Count II – strict liability (failure to warn); Count III – negligence; Count IV – negligent

misrepresentation; Count V – breach of express warranty; and Count VI – breach of implied

warranty.

The Court will address additional facts as necessary in its analysis.

## ANALYSIS

**A.      The Court Concludes It Has Personal Jurisdiction Over Defendants.**

**1.      Applicable Legal Standards.**

Defendants move to dismiss Plaintiffs' claims for lack of personal jurisdiction, under

Federal Rule of Civil Procedure 12(b)(2).  Due process requires that a defendant have "minimum

contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The Court's focus when evaluating

personal jurisdiction is on the "nature and extent of 'the defendant's relationship to the forum

---

[2]      Unlike Starr, Skinner, and Gibson, Rosewolf alleges he was prescribed Singulair before
Defendants' patent expired.

United States District Court
Northern District of California

1   state.'" *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, -- U.S. --, 141 S.Ct. 1017, 1024

2   (2021) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of California*, 582 U.S. --, 137 S. Ct 1773,

3   1779 (2017)) ("*Ford*"); *see also Walden v. Fiore*, 577 U.S. 277, 290 (2014) ("The proper question

4   is not where the plaintiff experienced a particular injury or effect but whether the defendant's

5   conduct connects him to the forum in a meaningful way.").

6          Plaintiffs argue the Court has specific jurisdiction over Defendants, which requires them to

7   show: (1) Defendants purposefully directed their activities at California or purposefully availed

8   themselves of California's laws; (2) Plaintiffs' claims arise out of or relate to Defendants'

9   activities in California; and (3) exercising jurisdiction would be reasonable.  *See, e.g.,*

10  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  In *Ford*, the Court

11  addressed the meaning of the phrase "arise out of or relate to" and concluded that

12              [t]he first half of that standard asks about causation; but the back
            half, after the "or," contemplates that some relationships will
13          support jurisdiction without a causal showing.  That does not mean
            anything goes.  In the sphere of specific jurisdiction, the phrase
14          "relate to" incorporates real limits, as it must to adequately protect
            defendants foreign to a forum.  But again, we have never framed the
15          specific jurisdiction inquiry as always requiring proof of
            causation—*i.e.*, proof that the plaintiff 's claim came about because
16          of the defendant's in-state conduct.

17  *Ford*, 141 S.Ct. at 1026.

18          Plaintiffs bear the burden of proving the first two prongs.  *Schwarzenegger*, 347 F.3d at

19  802.  If Plaintiffs meet their burden, "the burden then shifts to [Defendants] to present a

20  compelling case that the exercise of jurisdiction would not be reasonable."  *Id.* (internal quotation

21  marks omitted).

22          2.      **Analysis.**

23          Defendants challenge Plaintiffs' allegations on the second prong of the specific jurisdiction

24  test, and and the parties dispute what contacts are jurisdictionally relevant in light of Plaintiff's

25  theory of warning label liability.  The California Supreme Court has reasoned that because a

26  brand-name manufacturer is responsible for the content of a drug's warning label, it "knows to a

27  legal certainty … that any deficiencies in the label for its drug will be perpetrated in the label for

28  its generic bioequivalent."  *T.H. v. Novartis Pharm. Corp.*, 4 Cal. 5th 145, 166 (2017).  Thus,

United States District Court
Northern District of California

California has extended liability for failure to warn to a brand-name manufacturer of a prescription drug "regardless of whether the consumer is prescribed the brand-name drug or its generic bioequivalent." *Id.* at 165 (internal quotations and citations omitted).

Defendants argue that because they made decisions about the contents of Singulair's label either in New Jersey or in Pennsylvania, there are no contacts in California that give rise to or relate to Plaintiffs' claims. (*See Starr* Dkt. No. 8-2, Declaration of Shannon Beamer, ¶ 3, Ex. 1 (Declaration of Margaret McCann, ¶¶ 3-4).) Plaintiffs counter by arguing the Court can, and should, consider a broader range of activities, including research Defendants conducted in California, sales of Singulair in California, and Defendants' marketing and advertising to consumers and physicians in California. The parties each have authority to support their positions.

Defendants argue the Court should follow *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 546 F. Supp. 3d 1192, 1213 (S.D. Fla. 2021) ("*Zantac*"). In that case, the court dismissed California plaintiffs' claims for negligent misrepresentation, which related to the safety of ranitidine, the active ingredient in Zantac. *Id.* at 1199. It found plaintiffs' allegations regarding the defendant's sales and marketing were sufficient to establish the defendants purposefully availed themselves of a California forum. *Id.* at 1211-12. It also acknowledged that, under *Ford*, the plaintiffs were not required to show "but for" causation to establish jurisdiction. *Id.* at 1198 n.5, 1203-04. However, it reasoned that any misrepresentations the defendants made about Zantac's safety in sales and marketing material were not necessary to state a claim under warning label liability. Thus, it held that those contacts were not jurisdictionally relevant. *Id.* at 1212-13.

Defendants also rely on *R.S.B. v. Merck & Co.*, and argue that, unlike the defendants in *Ford*, they did not benefit from the contacts on which Plaintiffs rely. No. 20-C-1402-WCG, 2021 WL 6113765, at *3 (E.D. Wis. Dec. 27, 2021). In *R.S.B*, the court concluded the plaintiffs' negligent misrepresentation claim was barred under Wisconsin's product liability statute, which requires a plaintiff to show a defendant, *inter alia*, "promotes" a product. The court rejected the plaintiffs' argument that, by being responsible for Singulair's label, Defendants promoted the generic version of the drug. "A company, no matter what precarious position it may be in, does not intend to promote a competitor's product to the detriment of its own sales." *Id.*, at *5. *R.S.B.*

United States District Court
Northern District of California

1   is not a case about personal jurisdiction, and that court was not called upon to construe California

2   law, which has accepted warning label liability as a viable theory.  For those reasons, the Court

3   does not find Defendants' reliance on *R.S.B.* persuasive.

4          *T.H.* also is not a case about personal jurisdiction.  However, the defendant argued that

5   warning label liability claims are unfair to brand-name manufacturers because they would hold

6   them liable for harm caused by a competitor's product, from which they "derive[] no revenue or

7   profit."  4 Cal. 5th at 172.  The California Supreme Court was not persuaded.  It reasoned the

8   plaintiffs' claim was not about whether the generic drug was defectively designed or inherently

9   dangerous.  "It is that [the drug's] warning label failed to mention the risk … and Novartis was

10   responsible for the deficient label.  So the alleged fault here lies with Novartis, not with its generic

11   competitors." *Id.*  The court also reasoned that any burden falling on brand-name manufacturers

12   would be "more than offset by the substantial benefits federal law confers on the brand-name

13   manufacturer" for the life of its patents.  *Id.*

14          Plaintiffs, in turn, rely on *Whaley v. Merck & Co., Inc.*, in which the court considered and

15   rejected many of the same arguments Defendants raise in this case.  21-cv-01985-H-BLM, 2022

16   WL 1153151 (S.D. Cal. Apr. 12, 2022).  In *Whaley*, the court reasoned that adopting Defendants'

17   argument would require a court to find "a causal link between the activity and the cause of action,"

18   a requirement rejected by the Supreme Court in *Ford. Id.* at *5.  The court also noted that

19   Defendants' marketing and sales activities would encompass both the drug and the label.  "Federal

20   law combines these two parts into the same product and California law recognizes a cause of

21   action concerning the warning label part." *Id.,* at *6.  The court also reasoned that, like the

22   defendant in *T.H.*, Defendants misconstrued the nature of the plaintiffs' claims by casting the

23   claims as related only to generic montelukast, not Singulair.  The court determined the plaintiffs'

24   claim was "not that [montelukast] is defectively designed or inherently dangerous.  It is that

25   [montelukast's] warning label failed to mention the risk ... and that [Merck] was responsible for

26   the deficient label.  So the alleged fault here lies with [Merck], not with its generic competitors."

27   *Id.* (quoting *T.H.*, 4 Cal. 5th at 172 (brackets as in *Whaley*)); *see also Bueno v. Merck & Co., Inc.*,

28   No. 22-cv-522-H-BLM, 2022 WL 4125231, at *5 (S.D. Cal. Sept. 8, 2022) ("Defendants' forum-

United States District Court
Northern District of California

7

1  based advertising, marketing, and selling of Singulair – the product that is at the heart of

2  Plaintiffs' claim – are jurisdictional activities under *Ford* that are within the 'real limits' of the

3  'relates to' element of the specific jurisdiction test," even if they "only ingested generic

4  montelukast.")

5     The Court finds *Whaley* and *Bueno* more persuasive than *Zantac* and agrees that

6  Defendants' jurisdictional challenge is, in actuality, a challenge "aimed at California's warning

7  label liability law." *Whaley*, 2022 WL 1153151, at *8; *see also Bueno*, 2022 WL 4125231, at *5.

8  Even if Plaintiffs received and ingested generic montelukast, Defendants' activities selling and

9  promoting Singulair "count because California law assigns liability to Defendants for the label on

10  their Singulair product;" that label is part and parcel of the drug Defendants have marketed and

11  sold within California. *Whaley*, 2022 WL 1153151, at *8; *cf. T.H.*, 4 Cal. 5th at 172 (stating that

12  federal law "bundles – and indeed, only makes available – benefits" associated with a new drug

13  "along with the responsibility to maintain an adequate warning label").

14     Defendants also argue that if the Court follows *Whaley,* it should still grant the motion

15  because Plaintiffs fail to include specific facts showing their doctors were exposed to any of the

16  alleged marketing activities and also failed to provide detail about the nature of Defendants'

17  advertising and marketing campaigns.  In *Bueno,* the court noted that the plaintiffs' allegations

18  were less detailed than in *Whaley*.  It still found them sufficient and concluded that "maintenance

19  of the suit does not offend traditional notions of fair play and substantial justice." *Bueno*, 2022

20  WL 4125231. at *5, n.6.[3]  The Court concludes the allegations here also are sufficient to allege the

21  Court has jurisdiction over Defendants.

22     Accordingly, the Court DENIES Defendants' motions to dismiss on this basis.

23

24

25  [3] Plaintiffs have also alleged far more contacts than the plaintiff in *Henry v. Angelini Pharma, Inc.*, No. 17-cv-2593-TLN-KJN, 2020 WL 1532174, at *4 (E.D. Cal. Mar. 31, 2020), on

26  which Defendants rely, and the Court finds that case distinguishable. *Cf. Whaley,* 2022 WL 1153151, at *8.  The Court also finds *LNS Enter. LLC v. Cont'l Motors, Inc.* distinguishable.  22

27  F.4th 852 (9th Cir. 2022).  There, the Ninth Circuit did not address the theory of warning label liability.  Further, unlike the defendant in that case, when Defendants marketed and sold Singulair

28  in California, they marketed and sold a warning label which, by law, generic manufacturers were bound to include on their products.

United States District Court
Northern District of California

**B.      Plaintiffs Have Stated Claims for Relief, in Part.**

      **1.      Applicable Legal Standards.**

Defendants also move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Under Rule 12(b)(6), the Court's inquiry generally "is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

A plaintiff must state fraud based claims with particularity but can plead intent, knowledge, and other matters relating to state of mind generally.  Fed. R. Civ. P. 9(b).  A claim is "grounded in fraud" if the plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of his or her claim."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003).  Rule 9(b)'s particularity requirements must be read in harmony with Rule 8, which requires a "short and plain" statement of the claim.  The particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).  Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1107 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

If the allegations are insufficient to state a claim, a court should grant leave to amend,

United States District Court
Northern District of California

1    unless amendment would be futile.  *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th

2    Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th

3    Cir. 1990).

4              **2.      Analysis.**

5                       **a.      Plaintiffs' Concessions.**

6              Plaintiffs concede that Count I and the portion of Count III that is not based on a failure to

7    warn should be dismissed.  Accordingly, the Court GRANTS, IN PART, the motions on that

8    basis.

9                       **b.      Plaintiffs' allegations on the failure to warn claims are adequate.**

10             Counts II, III, and IV are premised on Plaintiffs' allegations that Defendants failed to

11   include adequate warnings on Singulair's label regarding the likelihood that it could cause

12   neuropsychiatric injuries.  In California, "in the case of prescription drugs, the duty to warn runs to

13   the *physician*, not to the patient." *Carlin v. Super. Ct.*, 13 Cal. 4th 1104, 1116 (1996) (emphasis in

14   original).  In *Bueno*, the court considered the three cases on which Defendants rely to support their

15   position:  *Fisher v. Boston Sci. Corp.*, No. SACV 19-02106 JVS (DFM), 2020 WL 2300138 (C.D.

16   Cal. Mar. 25, 2020), *Marroquin v. Pfizer, Inc.*, 367 F. Supp. 3d 1152 (E.D. Cal. 2019), and *Tapia*

17   *v. Davol, Inc.*, 116 F. Supp. 3d 1149 (S.D. Cal. 2015).  It concluded that although the plaintiffs did

18   not include the names of their physicians, the allegations were directed to the plaintiffs in

19   particular, rather than to patients and physicians in general, and were sufficient to state a claim.

20   *Bueno*, 2022 WL 4125231, at *6; *see also Whaley*, 2022 WL 1153151, at *12 (finding allegations

21   sufficient to state a claim).

22             Unlike the plaintiff in *Tapia*, Plaintiffs do not make "allegations as to 'physicians' in

23   general, and the 'healthcare community.'" *Tapia*, 116 F. Supp. 3d at 1158.  Plaintiffs' allegations

24   here also are distinguishable from the allegations in *Fischer*.  There the plaintiff alleged the

25   defendant failed to warn her "and/or her physician" of alleged defects in the product but also

26   included allegations about numerous safety issues.  The plaintiff did not, however, clearly specify

27   which of those allegations applied to her. *Fisher*, 2020 WL 2300138, at *3.  Finally, in

28   *Marroquin,* the court concluded the plaintiff's allegations were not sufficient, in part, because the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    plaintiff alleged that "'ordinary consumers' could not have recognized the potential risks of the"

2    drug and did not include facts to show "how or why the warnings provided were inadequate. …

3    Merely stating that the Defendants failed to 'adequately warn'" of the alleged risks "is a bare legal

4    conclusion." *Marroquin*, 367 F. Supp. 3d at 1161-62.  Here, although Plaintiffs do not provide the

5    names of their physicians, they have included facts that describe the information available to

6    Defendants about the risk of severe neuropsychotic events and the likelihood that montelukast

7    crossed the blood-brain barrier, as well as facts to show why Singulair's label allegedly did not

8    adequately warn of those dangers.

9        Accordingly, the Court concludes Plaintiffs' allegations pass muster under Rule 8.  *Cf.*

10   *Whaley*, 2022 WL 1153151, at \*12.  The Court DENIES, IN PART, Defendants' motions on this

11   basis as well.[4]

12                **c.        Plaintiffs' allegations on the negligent misrepresentation claims are
                             adequate.**

13       Defendants argue that Plaintiffs' claims for negligent misrepresentation fail to comply with

14   Rule 9(b) because Plaintiffs do not describe with particularity the statements contained in media or

15   advertisements, do not identify what individuals made statements on Defendants' behalf, and do

16   not provide the dates on which Plaintiffs and/or their physicians saw these statements.  Plaintiffs

17   did not directly address this argument in their opposition.

18       Plaintiffs allege why Singulair's label (what) failed to describe the risks associated with the

19   Drug.  Plaintiffs allege that Defendants created Singulair's label (who), and at this stage the Court

20   will not fault them for being unable to specifically identify the particular employees who may

21   have made those decisions.  Finally, Plaintiffs allege the time period during which they were

22   prescribed Singulair or a generic equivalent and allege they were prescribed and ingested Singulair

23   or its equivalent in California (when and where).  Finally, Plaintiffs provided detailed allegations

24   about why and how Singulair's label failed to sufficiently disclose the risks involved and allege

25   their physicians would not have prescribed Singulair had those risks been disclosed.

26

27   _____

28   [4]      The Court does not reach Plaintiffs' alternative argument that Defendants also could be
     held liable based on direct marketing to consumers.

The Court concludes Plaintiffs' allegations are sufficient under Rule 9(b) and DENIES Defendants' motion to dismiss on this basis as well.

**d.      Plaintiffs' allegations on their breach of warranty claims are adequate.**

Defendants also argue the Court should dismiss Plaintiffs' claims for breach of express or implied warranty because they have failed to adequately allege their physicians relied on any purported warranties.  For the reasons set forth in Section B.2.b and B.2.c, the Court concludes Plaintiffs' allegations are sufficient to withstand Defendants' motions.  Accordingly, the Court DENIES Defendants' motions to dismiss on this basis as well.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS, IN PART, and DENIES IN PART, Defendants' motions to dismiss.  Pursuant to the Court's Order granting Defendants' motion to dismiss Rosewolf's claims, with leave to amend, Rosewolf shall file an amended complaint by no later than November 2, 2022.  Defendants shall respond to Rosewolf's amended complaint by no later than November 23, 2022, and shall respond to the remaining Plaintiffs' complaints by November 2, 2022.

The parties shall appear on December 9, 2022 at 11:00 a.m. for a case management conference in these cases, and they shall file a joint case management conference statement by December 2, 2022.

**IT IS SO ORDERED**.

Dated: October 12, 2022

JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California

12